## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| A.  MARK GETACHEW and | : | CASE NO. 3:23cv1381 |
| DENORA M. GETACHEW | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| L&S INVESTMENTS, LLC, | : | |
| LAWRENCE R. RUTKOWSKI, and | : | |
| ERIC GRAYSON, | : | OCTOBER 20, 2023 |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs A. Mark Getachew and DeNora M. Getachew bring this Complaint against Defendants L&S Investments, LLC, Lawrence Rutkowski and Attorney Eric Grayson for abuse of process, and hereby allege, on knowledge as to their own conduct and otherwise on information and belief, as follows:

## PARTIES

1.      Plaintiff A. Mark Getachew is a resident of New York, and an accomplished lawyer practicing at the law firm of Willkie Farr & Gallagher LLP.

2.      Plaintiff DeNora M. Getachew is a resident of New York, and an accomplished lawyer, serving as the CEO of the international public service organization DoSomething.org.

3.      Defendant L&S Investments, LLC ("L&S") is a Connecticut limited liability company with a current address of 2402 Alto Cerro Circle, San Diego, California.

4.      Defendant Lawrence R. Rutkowski ("Rutkowski") is a resident of California and member of L&S.

5.      Attorney Eric Grayson ("Grayson") is a lawyer admitted to the Bar in the State of Connecticut and the sole member of his firm, Grayson & Associates, P.C., located in Greenwich, Connecticut.  Attorney Grayson is a resident of Connecticut and, at all times relevant to this Complaint, was Rutkowski's and L&S's counsel of record in a Connecticut state court action commenced by Mr. and Mrs. Getachew against Rutkowski and L&S in August 2020, captioned *A. Mark Getachew and Denora M. Getachew v. L&S Investments, LLC and Lawrence R. Rutkowski*, FST-CV20-6052318-S ("the State Court Action").  In the State Court Action, the Getachews brought several claims against Rutkowski and L&S arising out of their rental of residential premises known as 9 Stallion Trail, Greenwich, Connecticut (the "Premises").  The Getachews are the second set of successive tenants who leased Mr. Rutkowski's residence to file suit against him and his company for its rental practices.  The prior tenants, the Fallons, won a judgment of $76,883.22 based on Rutkowski's multiple abuses of the law in his role as landlord.  At all relevant times, Defendant Grayson acted, and continues to act, as attorney and agent for Rutkowski and L&S.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332.  The amount in controversy exceeds $75,000.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Connecticut.

## FACTS

### The Getachews Lease the Premises

8.        Mark and DeNora Getachew are husband and wife.  When the COVID-19 pandemic hit in early 2020, the Getachews, who were living with their children in New York City at that time, sought to leave the City for the safety and well-being of themselves and their children. The Getachews began searching for a single-family home in Fairfield County and surrounding areas.  The Getachews limited their search so that the home they found would not be too far from the City so that they and their children could travel to the City for work and school once that became safe and allowed.

9.        Like most people in the early stages of the COVID-19 pandemic, the Getachews anticipated spending a significant amount of time at home in quarantine, and focused their search only on homes that could, in one safe location, accommodate their respective work, school, and social activities.  Knowing that summer camp for their children was likely not possible, and that their children would be at home during the summer, the Getachews only considered homes with swimming pools.

10.        In May 2020, the Getachews were introduced to the Premises, advertised as a luxurious "Magnificent Mansion" with (among other amenities) a swimming pool with an attached spa/hot tub, and custom waterfall. Jen Danzi ("Danzi"), a realtor hired by Defendant Rutkowski, showed the Getachews the Premises.  When the Getachews visited the Premises, the pool, hot tub and waterfall were still closed for the winter season.  Mr. Getachew asked Danzi about the condition of the pool, and Danzi told the Getachews that all systems, including the pool and spa were "fully functioning and in good condition."  Defendant Rutkowski authorized Danzi to make this representation.

11.     The Premises were listed for rent and sale, and Defendant Rutkowski communicated through Danzi that he was open to the Getachews renting the Premises with an option to purchase the property later on.  Given the uncertainty created by the Covid-19 pandemic, and other factors, the Getachews determined that they would lease the Premises with an option to purchase, allowing them to live at the Premises before deciding whether it would be advisable for them to purchase the property.

12.     The Getachews were presented with a form of lease listing Defendant L&S as the Landlord, and on June 5, 2020 signed that lease for the rental of the Premises with an option enabling the Getachews to purchase the property.   In addition to a form of Lease, Mr. Getachew negotiated a Rider to the Lease, which also listed Defendant L&S as the Landlord.  Mr. Getachew negotiated this Rider with Defendant Grayson, who was then an attorney representing Defendants Rutkowski and L&S.

13.     At the time of the lease negotiations in June 2020, Defendant Rutkowski knew but did not disclose to the Getachews that L&S did not own the premises.  In fact, as of October 2012, the Premises were owned by a trust - The Lawrence R. Rutkowski Residence Irrevocable Trust.  Consequently, although Defendant L&S was listed as the Landlord on the Lease and Rider, at all relevant times, neither Defendant L&S nor Rutkowski was the actual record owner of the Premises.  As such, Defendant L&S had no ability to sell the Premises to the Getachews if they ever chose to exercise their purchase option.

14.     During the negotiation of the Rider, Defendant Grayson assured Mr. Getachew that everything at the Premises was in good repair and working properly.  With respect to the pool at the Premises, Defendant Grayson assured Mr. Getachew that the pool was in working order

and simply needed to be opened for the season.  At no time did Defendant Grayson (or Defendant Rutkowski or Danzi) suggest that there was any issue with the pool, hot tub or waterfall.

**The State Court Lawsuit**

15.     On June 6, 2020, one day after concluding the lease negotiations, the Getachews discovered several problems with the Premises, including that the pool, hot tub and waterfall were not "fully functioning and in good condition" as represented by Defendant Rutkowski, or in working order as represented by Defendant Grayson, but were inoperable and had been inoperable for some time.

16.     With Defendant Rutkowski's knowledge and approval, the Getachews engaged Defendant Rutkowski's pool service vendor to perform repairs to the pool.  These pool repairs included repairs to items initially identified on June 6, 2020, and repairs to several additional pool related items that were not initially apparent and that were discovered once the initial pool repairs were underway.  Mr. Getachew kept Defendant Rutkowski fully informed throughout in real time about all of the repairs to the pool, hot tub and waterfall, and provided Defendant Rutkowski with before and after pictures and video of the repairs, and receipts for the repairs.

17.     Defendant Rutkowski initially agreed to reimburse the Getachews for the costs of these pool related repairs and other repairs to the Premises, which totaled more than $44,500, and instructed the Getachews to deduct these repair costs from their rent.  However, after the Getachews told Defendant Rutkowski that, in light of the several inoperable features of the Premises and the amount of needed repairs, they were not prepared to commit to purchasing the Premises, Defendant Rutkowski changed his position and general demeanor toward the Getachews and the rental arrangements.  Defendant Rutkowski began to insist on full payment of rent and threatened to sue and evict the Getachews if they failed to comply with his demands.

5

18.     In August 2020, after occupying the Premises for less than three months, and after Defendant Rutkowski refused to reimburse the Getachews for the repair costs that they had incurred, and after Defendant Rutkowski refused the Getachews' other overtures to resolve the dispute, the Getachews commenced an action in Connecticut State Court against Defendants Rutkowski and L&S.  In the State Court Action, the Getachews alleged against Defendants L&S and Rutkowski claims for breach of lease, unjust enrichment, fraudulent inducement, and fraudulent misrepresentation.

**CLAIM FOR RELIEF**
**COUNT ONE**
**(Abuse of Process Against All Defendants)**

19.     Plaintiffs repeat and reallege paragraphs 1 through 18 above as if fully set forth herein.

20.     Before the Getachews commenced the State Court Action, Defendant Rutkowski threatened to sue the Getachews and evict them from the Premises.  On August 3, 2020, after the threat of litigation was made by Defendant Rutkowski, Mr. Getachew notified Defendant Grayson that Defendant Grayson would be a fact witness to the issues in dispute and would be called to testify if litigation ensued.

21.     On Saturday, August 22, 2020, Defendant Grayson called prior counsel for Plaintiffs, Alison Baker of the law firm of Shipman & Goodwin.  During their conversation, Defendant Grayson threatened to provide defamatory statements about the Getachews to the New York Post unless Attorney Baker agreed to refrain from moving to disqualify him from representing Defendants Rutkowski and L&S and refrain from pursuing litigation related to this matter.

6

22.     On Wednesday, August 26, 2020, after Defendants Rutkowski and L&S were served with the complaint in the State Court Action, Defendant Grayson emailed Attorney Baker, stating that because of the instant litigation, going forward, "although I am a blip on Shipman's radar screen, I will refer my T&E clients elsewhere."

23.     On Thursday, August 27, 2020, Attorney Baker wrote to Attorney Grayson:

"Regarding your referrals of business, you are welcome to refer business to whomever you wish.  But the suggestion that Shipman & Goodwin should compromise a client's position in an attempt to foster referrals of future business is improper.  Further, as I said to you when you called me on Saturday morning, it is also improper to threaten to provide defamatory statements to the press, as you did, to extract an agreement to not file a disqualification (or any other) motion, or to otherwise pursue or not pursue any action with respect to the lawsuit we recently commenced."

24.     On September 29, 2020, the Getachews moved to disqualify Defendant Grayson pursuant to Rule 3.7 of the Rules of Professional Conduct, which prohibits an attorney from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness.  This motion to disqualify argued, among other things, that Defendant Grayson was a necessary witness because of statements he made to Mr. Getachew prior to initiation of the lease concerning the condition of the house and pool, which representations were made during the negotiation of the Rider to the lease.

25.     Defendants strenuously resisted the Motion to Disqualify at the time, and solicited an affidavit from Danzi, the realtor who showed the Getachews the Premises in May 2020, which they filed in opposition to the Motion to Disqualify.  In that Affidavit, Danzi recounted events that occurred when she showed the Getachews the Premises.  Danzi stated that "Mr. Getachew asked me if I knew about the condition of the pool.  I specifically related that as far as I knew from what

I had been told by Larry, 'the pool was fully functioning and in good condition.' I may have said that 'Larry' or 'the owner' swam in it in October and he related to me that it was fine."[1]

26.    Defendant Rutkowski also filed an Affidavit in opposition to the Motion to Disqualify. In Defendant Rutkowski's Affidavit, dated October 12, 2020, Defendant Rutkowski stated that he "specifically authorized Jen Danzi to convey to the Getachews…that 'the pool was fully functioning and in good condition.'"

27.    These Affidavits were submitted in an effort to keep Defendant Grayson from being disqualified as the attorney representing Defendants Rutkowski and L&S in the State Court Action and to establish that Defendant Grayson's testimony about his pre-lease negotiations with Mr. Getachew was not necessary, thus saving him from disqualification under Rule 3.7 of the Rules of Professional Conduct.

28.    Nevertheless, two years later, in September 2022, Defendants retained new counsel to assume the defense of this action. On June 5, 2023, Defendant Rutkowski admitted at deposition that Defendant Grayson was replaced on the basis of Defendant Grayson's "potential conflict," the same basis as the Getachew's 2020 Motion to Disqualify. Defendant Rutkowski further

---

[1] Defendant Grayson later asked Danzi to submit an Affidavit that said something different, and according to Danzi, untrue. On March 12, 2022, presumably in connection with a later filed motion in the State Court Action, Defendant Grayson asked Danzi "to sign a quick affidavit…that says you never stated to the getachews [sic] that the house or the pool 'were in good condition.' They walked around the house made that determination for themselves and about the pool you just said the owner swim [sic] in it maybe and you believe it was operating when it was shut down.'" Danzi did not sign an affidavit setting forth these facts, and testified at deposition that she refused to do so because they would not have been true. Rather, in an Affidavit dated March 13, 2022, Danzi repeated her earlier assertions that Defendant Rutkowski represented to her that "all systems, including the pool and spa to be 'fully functioning' and in proper working condition" and that Defendant Rutkowski authorized her to tell the Getachews that "as far as I knew from what I had been told by Larry, 'the pool was fully functioning and in good condition.'"

acknowledged that the decision to change counsel was precipitated by the fact that Defendant Grayson "would likely be called as a witness into the Getachew trial."

29.    On October 20, 2020, the state court denied the Motion to Disqualify Defendant Grayson filed by the Getachews.

**The New York Post Article**

30.    Defendant Rutkowski's October 12, 2020 Affidavit also contained eight paragraphs of highly inflammatory material, none of it having anything to do with the Motion to Disqualify. Nor are these eight paragraphs responsive to anything alleged by the Getachews in their Motion to Disqualify. Defendant Rutkowski stated that he was including these paragraphs to show the state court what Defendant Rutkowski called "the true state of horrid affairs." Defendants explicitly acknowledged that the first three and a half pages of the affidavit bore no relation to the purpose of the proceeding. About the Getachews, with whom he personally met only one time, Defendant Rutkowski stated: "Before I address the substance of the Motion to Disqualify, I want the Court to know that the Plaintiffs, especially Attorney Mark Getachew, are the singularly least professional, least honest (read dishonest), least moral people I have dealt with in my 40 plus years of professional life...."

31.    In the next paragraphs of his Affidavit, Defendant Rutkowski stated that the "Getachews are the worst type of tenants one can imagine." Equating the Getachews to "squatters," Defendant Rutkowski stated further that "[w]hile they appear to be professional, they are similar to the type of rich entitled people who have taken over houses in the Hamptons, supposedly to escape the Covid epidemic, and have taken advantage of the no-eviction moratorium in NY enacted by Government Cuomo, and now here, the moratorium in Connecticut enacted by Government Lamont."

32.     Immediately upon the denial of the Motion to Disqualify, on October 20, 2020, Defendant Grayson made good on the threats to provide defamatory statements to the New York Post that he made to Attorney Alison Baker on August 22, 2022.  On October 20, 2020, Defendant Grayson emailed the New York Post on behalf of Defendants Rutkowski and L&S.  Defendant Grayson directed a reporter at The New York Post to the court file containing the pleadings filed by the parties in the State Court Action, which included Defendant Rutkowski's October 12, 2020 Affidavit.  Defendant Grayson did so in an effort to disparage the Getachews and intimidate them into backing away from the instant litigation.

33.     During a 48-hour period starting Tuesday, October 20, 2020 and ending on October 21, 2020, Defendant Grayson communicated back and forth by email and text with reporters from the New York Post a total of at least twenty-one (21) times.

34.     In addition, Defendant Grayson requested the New York Post reporter's cell phone number and pressured her to pitch an article that would pressure Getachews into settlement or dropping their claims.

35.     Shortly after the call, Defendant Grayson forwarded photographs of the Premises (the Getachew's residence at the time) to the New York Post reporter for publication alongside the article.  On October 20, 2020, right after the Decision on the Motion to Disqualify, Defendant Grayson requested and obtained the photographs from Danzi, who showed the premises to the Getachews in May 2020 and who had previously used the photographs in connection with the listing of the Premises for sale and for rent.  Defendant Grayson advised Danzi that "we won our motion," and at Defendant Grayson's request, Danzi sent to Defendant Grayson a link to the rental listing with photographs of the Premises.  Defendant Grayson asked for three specific photographs from the listing to be sent to him, and Danzi complied.  It was not until Danzi's deposition on

March 24, 2023, that the Getachews learned that Defendant Grayson had requested the photographs from Danzi to forward to the New York Post.

36.     More disturbing, Defendant Grayson made explicit representations in writing to the New York Post that his client, Defendant Rutkowski, had confirmed an image of Mark Getachew to be used to headline the article.

37.     On October 21, 2020, prior to the publication of the New York Post article, the New York Post reporter asked Defendant Grayson whether Defendant Grayson's client (that is, Defendant Rutkowski) could confirm that a picture she sent to Defendant Grayson was in fact Mr. Getachew.   After Defendant Grayson simply responded, "Yes he can," the New York Post Reporter pressed Defendant Grayson and asked, "So to clarify, your client confirms that is Mr. Getachew?," to which Defendant Grayson responded "Yes."

38.     At his deposition, Defendant Grayson testified that Defendant Rutkowski confirmed that the picture sent by the New York Post reporter did in fact depict Mr. Getachew.   At his deposition, Defendant Rutkowski denied that such a conversation with Defendant Grayson had occurred.

39.     As a result of the conduct of Defendants Grayson and Rutkowski, the New York Post published its "exclusive" headline alongside a headshot of Mark Getachew on Wednesday October 21, 2020: "Ex-Disney CFO claims couple squatting in his $2.2M Connecticut mansion." A copy of the New York Post article is attached hereto as Exhibit A.   At least one other article appeared shortly thereafter – an October 23, 2020 article in the Greenwich Time, attached as Exhibit B.   These articles were congregated and republished broadly over the internet by dozens of news aggregator websites and online publications including but not limited to Above the Law, The Daily Beast, Daily Mail, Barstool Sports, Westfair Online, and the ABA Journal.

40.     Mr. and Mrs. Getachew, both high profile attorneys, were characterized as "the worst type of tenants one can imagine."  The New York Post article (and the article in the Greenwich Time) stated: "While they appear to be professional, they are similar to the type of rich entitled people who have taken over houses in the Hamptons, supposedly to escape the COVID epidemic, and have taken advantage of the no-eviction moratorium . . . in Connecticut enacted by Governor Lamont."  These direct quotes were taken from the October 12, 2020 affidavit signed by Defendant Rutkowski and drafted by Attorney Grayson.

41.     Quoting directly from sections of Defendant Rutkowski's affidavit that were in no way pertinent to the Motion to Disqualify, the New York Post article stated: "Denora and Mark – a lawyer at Willkie Farr & Gallagher – 'are the singularly least professional, least honest …, least moral people I have dealt with in my 40 plus years of professional life[.]'"

42.     The continuing reputational damage and trauma caused to the Getachew family by the New York Post article cannot be overstated.  As could be expected, the ramifications on the lives of the Getachews and their three children (including two who were under 10 years old at the time) were severe and devastating.  In the days, weeks and months after its publication, Mark and DeNora – both lawyers in New York – were inundated by colleagues, clients, friends and acquaintances, most of whom expressed shock and dismay at the obviously
 inflammatory and derogatory accusations.

43.     To this day, approximately three years later, the Getachews are still dealing with the effects of the article concocted by Defendants Rutkowski and Grayson.  The exasperating task of explaining the actual circumstances of the case to seemingly everyone they interact with, as well as the impacts to their professional and personal lives, became and continue to be a recurring nightmare.  Indeed, Just *yesterday*, on October 19, 2023, Mr. Getachew received an inquiry from

a charitable organization with which he is affiliated, asking for a statement in response to a background check citing an October 21, 2020 MailOnline article, which quotes from Defendant Rutkowski's affidavit.

44.     More frightening, the Getachews received anonymous death threats as a result of this defamatory media coverage.  This is the primary reason Mr. Getachew does not want his family's address in the public record.[2]  There is little doubt that in soliciting the New York Post article, Defendants Rutkowski and Grayson acted with malice.  Likely in recognition of this fact, Defendants Grayson and Rutkowski fraudulently concealed their behavior by hiding their communications with the New York Post – even going so far as untruthfully denying their existence under oath as part of the formal discovery process in the underlying State Court Action.  It was not until the deposition of non-party Danzi, on March 24, 2023, that the Getachews first definitively confirmed Defendants' behavior and the falsehood of their previous denials.

45.     Rutkowski's October 12, 2020 affidavit was submitted to the Court primarily to accomplish a purpose for which it was not designed.  Indeed, the affidavit spends eight paragraphs maliciously disparaging the Getachews before even addressing the Motion to Disqualify – the procedural matter to which the affidavit was purportedly related.

46.     Defendants used Rutkowski's October 12, 2020 affidavit as an extortionate tool to cause specific injury outside the normal contemplation of private litigation.  It would not be the last time.

47.     On December 7, 2020, in connection with an application for prejudgment remedy, Defendant Rutkowski submitted an affidavit seeking an attachment against Getachews in the absurd and unsupportable amount of $8,744,061.  When asked at deposition for the basis for his

_____

[2] Though irrelevant, Defendants sought to learn the Getachew family's current residential address through discovery in the underlying State Court Action, which the Getachews strenuously resisted.

claim for almost $9 million, Rutkowski asserted that it was confidential and subject to attorney client privilege.  In actuality, the astounding sum was another extortionate method concocted by Defendants Rutkowski and Grayson, his then counsel, to pressure Getachews into paying money that they did not owe.

48.     Recognizing that their claim to $8,744,061 was unsupported by any reasonable analysis of the record, Defendants withdrew their PJR application without prejudice, preventing adjudication on the merits.

49.     Prejudgment remedy is not a mechanism designed to pressure a party through excessive attachments.  Once again, Defendant Rutkowski's affidavit was submitted to the Court primarily to accomplish a purpose for which it was not designed.

50.     After publication of the New York Post article, rather than distancing himself from his gratuitous, disdainful October 12, 2020 affidavit, Defendant Rutkowski doubled down.   For example, on March 14, 2022, Rutkowski again signed and submitted to the Court his own affidavit, repeating the same disparaging commentary about the Getachews.   Moreover, Defendant Rutkowski once again acknowledged that his statements in this affidavit had no bearing on the Motion for Summary Judgment then at issue, prefacing his derogatory commentary by noting that it failed to address "the substance of the Motion . . . ."  Defendant Rutkowski repeated the reprehensible and damaging language previously quoted by the New York Post (and Greenwich Time), and repeated his assertion that the Getachews were "squatters."  Once again, Rutkowski's statements were not pertinent and submitted to the Court primarily to accomplish a purpose for which it was not designed.

51.     In addition to repeating his previous assertions that were picked up and published by the New York Post, Defendant Rutkowski included new assertions, again having nothing to do

with the motion for summary judgment then before the court.  Defendant Rutkowski called the Getachews "nasty and devious people," called Mr. Getachew a "fraudster," and asserted that they used "'Stalingrad Tactics' to attempt to beat L&S and me into submission."

52.     While parties to litigation are protected to a degree to allow for zealous advocacy and the candid search for truth, civil litigation and related PJR proceedings in the State of Connecticut are not mechanisms designed to pressure or coerce opposing parties into relinquishing well-founded, valid legal and equitable rights.  Here, Defendants' misconduct was explicitly announced by Defendant Grayson when he initiated Defendants' threats to prior counsel.  Soon afterward, Defendants carried out on those threats and later denied the same under oath in Connecticut Superior Court litigation.  It is obvious as to why Defendants falsely denied the above conduct under penalty of perjury.  Defendants intended to wield judicial process with the explicit purpose of causing specific injury outside the normal contemplation of private litigation in order to gain an unfair litigation advantage, then executed their plan causing significant damage to Plaintiffs – this is the epitome of the abuse of legal process.  Defendants' conduct is not protected because it was in no way pertinent to the subject of the underlying proceedings.  Nor would the general policy goal of encouraging candor apply in this particular context, as Defendants' conduct was entirely unrelated to the actual merits or even the substance of the proceedings at issue.

53.     Defendants' application for prejudgment remedy in the amount of $8,744,061 and their submission of unnecessary, disparaging affidavits having no bearing on the case were pursued to gain collateral advantage extraneous to the merits of the underlying litigation.   Here, Defendants' ulterior, personal motives were explicit.  Defendants' improper uses of the litigation process were made all the more egregious when Defendants broadcast their actions to the New

York Post as leverage to coerce the Getachews into surrendering their rights and property and into paying a fraudulently manufactured debt that had no basis in law.

54.     Defendants' statements and conduct bore no reasonable relation to the purpose of the underlying proceedings.  Defendants used the litigation process to extort the Getachews and to gain a collateral advantage unrelated to the proceedings at issue or merits of the case.  In pressuring the Getachews into giving up their rights and paying money to Defendants that the Getachews did not owe, Defendants misused the judicial procedure primarily to accomplish a purpose for which it was not designed.

55.     As a result of the foregoing, Getachews have been injured, in an amount to be determined at trial.

**WHEREFORE**, plaintiffs Mark and DeNora Getachew demand the following:

(a)     Compensatory damages,

(b)     Punitive damages;

(c)     Attorneys' fees and expenses;

(d)     Interest and costs; and

(e)     Such other and further relief as the Court deems just and proper.

PLAINTIFFS
A. MARK GETACHEW
DENORA M. GETACHEW

By: <u>/s/ Joseph W. Martini</u>
    Joseph W. Martini
    Federal Bar No. ct07225
    Ivan J. Ladd-Smith
    Federal Bar No. ct30972
    SPEARS MANNING & MARTINI LLC
    2425 Post Road, Suite 203
    Southport, CT 06890
    Telephone: 203-292-9766
    Facsimile: 203-292-9682
    Email:  jmartini@spearsmanning.com
            ladd-smith@spearsmanning.com