UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| A. MARK GETACHEW, | : | |
| DENORA M. GETACHEW, | : | |
|     Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:23-CV-01381 (JCH) |
| v. | : | |
| | : | |
| L&S INVESTMENTS, LLC, | : | |
| LAWRENCE R. RUTKOWSKI, and | : | |
| ERIC D. GRAYSON, | : | |
|     Defendants. | : | APRIL 5, 2024 |

**RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NOS. 24 & 30)**

**I.      INTRODUCTION**

Plaintiffs A. Mark Getachew and DeNora M. Getachew ("the Getachews") bring this action under Connecticut common law, pursuant to this court's diversity jurisdiction, against defendants L&S Investments, LLC ("L&S"); Lawrence Rutkowski ("Rutkowski"); and Eric D. Grayson ("Grayson").  See Complaint ("Compl.").  The Getachews allege abuse of process, in violation of Connecticut law, against all defendants.

Defendant Grayson has moved to dismiss the Complaint against him, see Eric Grayson's Motion to Dismiss ("Grayson's Mot.") (Doc. No. 24), which the plaintiffs oppose, see Plaintiffs' Corrected Memorandum of Law in Opposition to Defendant Grayson's Motion to Dismiss ("Pls.' Grayson Opp.") (Doc. No. 37).  Defendants L&S and Rutkowski have jointly filed a separate Motion to Dismiss the Complaint against them, see L&S Investments and Lawrence Rutkowski's Motion to Dismiss ("Rutkowski's Mot.") (Doc. No. 30), which the plaintiffs oppose, see Plaintiffs' Memorandum of Law in

1

Opposition to Defendants Rutkowski and L&S Investments' Motion to Dismiss ("Pls.' Rutkowski Opp.") (Doc. No. 38).

For the reasons set forth below, the Motions are denied.

## II.     BACKGROUND

### A.     Plaintiffs' Alleged Facts

The Getachews are attorneys who reside in New York.  See Compl. ¶¶ 1-2.  At the start of the COVID-19 pandemic, the Getachews leased a mansion ("the Premises") from Rutkowski, a Connecticut resident, and L&S, a Connecticut limited liability company of which Rutkowski was a member, with an option to purchase the Premises later.  See id. at ¶¶ 3-4, 8-12.  Although the lease and an accompanying rider to the lease listed L&S as the landlord for the Premises, neither L&S nor Rutkowski were the actual owners of the Premises, meaning that "L&S had no ability to sell the Premises to the Getachews if they ever chose to exercise their purchase option."  Id. at ¶¶ 12-13.

During the lease negotiations, Grayson—the attorney to L&S and Rutkowski—"assured Mr. Getachew that everything at the Premises was in good repair and working properly", including the Premises' pool.  Id. at ¶ 14.  After the negotiations concluded, the Getachews discovered various problems with the Premises, including that the pool was not functioning properly.  See id. at ¶ 15.  The Getachews worked with Rutkowski's pool service vendor to repair the pool and other amenities on the Premises, and Rutkowski initially agreed to reimburse them for the repair costs.  See id. at ¶¶ 16-17.  However, after the Getachews informed Rutkowski that, because of the "several inoperable features of the Premises and the amount of needed repairs, they were not prepared to commit to purchasing the Premises," Rutkowski changed his demeanor,

refused to reimburse the Getachews, and "began to insist on full payment of rent and threatened to sue and evict the Getachews if they failed to comply with his demands." Id. at ¶¶ 17-18.

The Getachews then sued Rutkowski in the Connecticut Superior Court. See id. at ¶ 18. Before filing suit, the Getachews notified Grayson that he "would be a fact witness to the issues in dispute and would be called to testify if litigation ensued." Id. at ¶ 20. In response, Grayson called Alison Baker ("Baker"), the Getachews' prior counsel, and threatened to provide defamatory statements about the Getachews to the New York Post unless Baker agreed to (1) refrain from moving to disqualify Grayson from representing L&S and Rutkowski and (2) refrain from pursuing litigation. See id. at ¶ 21. After the Getachews filed suit, Grayson emailed Baker and informed her he would no longer refer his clients to her firm. See id. at ¶ 22.

The Getachews moved to disqualify Grayson from representing L&S and Rutkowski, which the state court ultimately denied. See id. at ¶¶ 24, 29, 32. In opposition to the Motion, Rutkowski submitted an affidavit that "contained eight paragraphs of highly inflammatory material, none of it having anything to do with the Motion to Disqualify." Id. at ¶¶ 26, 30. For example, the Rutkowski Affidavit described the plaintiffs as "the singularly least professional, least honest . . . , least moral people" Rutkowski has ever dealt with in his professional life, referred to the Getachews as "rich entitled people", and equated them to "squatters". Id. at ¶¶ 30-31.

In an "effort to disparage the Getachews and intimidate them into backing away from the instant litigation", Grayson emailed the New York Post and directed a reporter to the state court pleadings, including Rutkowski's Affidavit. See id. at ¶ 32. Grayson

3

also "pressured [the reporter] to pitch an article that would pressure [the] Getachews into settlement or dropping their claims." Id. at ¶ 34.  Grayson also forwarded photographs of the Premises to the New York Post.  See id. at ¶ 45.  In addition, he "made explicit representations in writing to the New York Post that his client, Defendant Rutkowski, had confirmed an image of Mark Getachew to be used to headline the article."  Id. at ¶¶ 36-37.  On October 21, 2020, the New York Post published a headline, alongside a "headshot of Mark Getachew", titled "Ex-Disney CFO claims couple squatting in his $2.2M Connecticut mansion."  Id. at ¶ 39.  The article was laden with disparaging quotes taken directly from Rutkowski's state court Affidavit.  Id. at ¶ 41.  The article caused the Getachews significant reputational harm and trauma, and it led to them receiving death threats.  See id. at ¶¶ 42-44.

Initially, the defendants "fraudulently concealed their behavior by hiding their communications with the New York Post", including by "untruthfully denying their existence under oath as part of the formal discovery process in the underlying State Court Action."  Id. at ¶ 44.  "It was not until the [March 24, 2023] deposition of non-party [Jen] Danzi"—the real estate agent that showed the Getachews the Premises—that the Getachews "confirmed Defendants' behavior and the falsehood of their previous denials."  Id. at ¶¶ 10, 44.

On December 7, 2020, "in connection with an application for prejudgment remedy, Defendant Rutkowski submitted an affidavit seeking an attachment against Getachews" of $8,744,061, an extremely high amount that the defendants could neither support nor justify, in order to "pressure [the] Getachews into paying money that they

4

did not owe." Id. at ¶ 47.  The defendants then "withdrew their [prejudgment remedy] application without prejudice, preventing adjudication on the merits." Id. at ¶ 48.

On March 14, 2022, in connection with a motion for summary judgment, Rutkowski signed and submitted another affidavit "repeating the same disparaging commentary about the Getachews" along with new derogatory remarks, all of which were—by Rutkowski's own admission—unrelated to the motion at issue. Id. at ¶¶ 50-51.

### B. Procedural Background

The plaintiffs filed their Complaint on October 20, 2023, which contains a single Count alleging abuse of process against all defendants. See Compl.  On January 16, 2024, Grayson filed his Motion to Dismiss. See Grayson Mot.  L&S and Rutkowski filed their own Motion to Dismiss on February 26, 2024. See Rutkowski's Mot.  The plaintiffs have filed Oppositions to both Motions. See Pls.' Grayson Opp.; Pls.' Rutkowski Opp.

On February 26, 2024, L&S and Rutkowski moved to stay discovery until the court rules on their Motion to Dismiss. See Motion to Stay (Doc No. 32).  The court granted the Motion in part and stayed discovery until April 22, 2024. See Order (Doc. No. 35).

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter

5

jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  See Makarova, 201 F.3d at 113.

B.	Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  On a motion to dismiss, courts may take judicial notice of indisputable facts, including documents filed in other courts.

See Fed. R. Evid. 201; Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## IV.  DISCUSSION

### A.  L&S and Rutkowski's Motion to Dismiss (Doc. No. 30)

L&S and Rutkowski move to dismiss the plaintiffs' Complaint on two grounds. First, they contend that the plaintiffs' abuse of process claim "is actually a thinly disguised alleged defamation action" and "is therefore barred by the litigation privilege." See L&S and Rutkowski's Memorandum of Law in Support of Motion to Dismiss ("Rutkowski's Mem."), at 1 (Doc. No. 31).  Second, they argue that the Complaint "fails to state a claim upon which relief may be granted." Id.  The court addresses each argument in turn.

#### 1.  Litigation Privilege

The litigation privilege provides that "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." Hopkins v. O'Connor, 282 Conn. 821, 830-31 (2007) (internal quotation marks and citations omitted).  Connecticut courts have held that the "applicability of absolute immunity" based on the litigation privilege "implicates the court's subject matter jurisdiction." Dorfman v. Smith, 342 Conn. 582, 594 (2022).  The litigation privilege does not, however, apply to abuse of process claims.  See id. at 592.

The defendants contend that, because the plaintiffs are effectively alleging a defamation claim, their claim is barred by the litigation privilege.  See Rutkowski's Mem. at 9; accord Dorfman, 342 Conn. at 590-92 (noting that the litigation privilege applies to defamation clams).  The court disagrees with the defendants that the claim is nothing more than a "thinly disguised" defamation claim.  Rather, the plaintiffs' Complaint explicitly alleges abuse of process as its sole Count; pleads the requisite legal elements for abuse of process; and contains factual allegations that plausibly support an abuse of process claim, including that the defendants (1) submitted an affidavit primarily for an improper purpose and (2) sought a prejudgment remedy primarily for an improper purpose.  See Compl.; accord Section IV.A.2, infra (analyzing whether plaintiffs' Complaint plausibly alleges abuse of process).  Because the Complaint alleges abuse of process, the court cannot conclude that it is barred by the litigation privilege.[1]  See Dorfman, 342 Conn. at 592.  The defendants' Motion as to this ground is therefore denied.

---

[1] The defendants further contend that absolute immunity applies to plaintiffs' claim regarding the Rutkowski Affidavit because (1) their Complaint is "based on the words used in [the Affidavit]" and (2) the Connecticut Supreme Court has ""recognized a distinction between attempting to impose liability [on] a participant in a judicial proceeding for the words used therein and attempting to impose liability [on] a litigant for his improper use of the judicial system itself."  L&S Investments and Rutkowski's Reply Memorandum to Opposition to Motion to Dismiss, at 1-2 (Doc. No. 45) (quoting MacDermid, Inc. v. Leonetti, 310 Conn. 616, 629 (2013)).

The court disagrees with this characterization of the plaintiffs' claims.  The allegations of the Complaint, when read together, suggest that the plaintiffs' claims regarding the Affidavit are based not solely on the words used therein, but on the allegedly improper purpose behind the Affidavit's submission.  As discussed below, such allegations are sufficient, in this court's view, to state a claim for abuse of process.  See Section IV.A.2, infra.

## 2. Failure to State a Claim

The defendants further argue that, in the alternative, the plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. See Rutkowski's Mem. at 16.

To state a claim for abuse of process under Connecticut law, a plaintiff must allege facts plausibly supporting a claim that "the defendant used a judicial process for an improper purpose." Larobina v. McDonald, 274 Conn. 394, 407 (2005). "Use of a judicial process for an improper purpose occurs when a party uses that process for something for which it was not designed." Miles v. City of Hartford, 445 Fed. App'x 379, 384 (2d Cir. 2011). "Such improper purpose must be the primary, rather than the incidental, reason the tortfeasor engages in the process in question." Id. Accordingly, a plaintiff must "point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP, 281 Conn. 84, 96 (2007) (quoting Mozzochi v. Beck, 204 Conn. 490, 497 (1987)). The Connecticut Supreme Court has emphasized that the term "process" is "broad" and that it "cover[s] a wide range of judicial procedures". See Larobina, 274 Conn. at 406-07.

Here, the plaintiff's Complaint contains factual allegations that, taken as true, state a plausible abuse of process claim. First, the Complaint alleges that the defendants filed the Rutkowski Affidavit primarily to publicly "disparage the Getachews and intimidate them into backing away from the instant litigation." See Compl. ¶ 23;

accord October 12, 2020 Affidavit of Lawrence Rutkowski (Doc. No. 24-3).[2]  In support of this assertion, the Complaint alleges that (1) Grayson, acting as Rutkowski's lawyer and agent, "threatened to provide defamatory statements about the Getachews to the New York Post"; (2) filed the Affidavit in response to plaintiff's Motion to Disqualify, and said Affidavit contained incendiary, derogatory statements unrelated to the Motion at hand; and (3) directed the New York Post to the Affidavit and encouraged it to publish an article disparaging the Getachews, based on the contents of the Affidavit.  See Compl. ¶¶ 5, 21, 30-39.  These factual allegations, accepted as true, suggest that the Affidavit was filed by defendants for the primary purpose of making good on their threats to facilitate publication of a New York Post article to publicly embarrass the Getachews and intimidate them into dropping their claims.[3]  The plaintiffs have thus adequately alleged "specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation."  Mozzochi, 204 Conn. at 494-98; accord Bernhard-Thomas Bldg. Sys., LLC v. Dunican, 100 Conn. App. 63, 79 (2007) (noting that, where a complaint alleges that a defendant used a legal process primarily for the purpose of "reveal[ing] embarrassing information", those allegations may give rise to an abuse of process claim (emphasis added)).[4]

---

[2] Defendant Grayson has provided a copy of the Rutkowski Affidavit, along with other court filings, as part of his own Motion to Dismiss.

[3] The court disagrees with the defendants' argument that, because the Affidavit was "submitted defensively" in response to plaintiff's Motion to Disqualify—which was ultimately denied—plaintiffs' abuse of process claim necessarily fails.  See Rutkowski's Mem. at 16-18.  As discussed above, the plaintiffs allege that the defendants threatened to facilitate publication of an embarrassing article about them in the New York Post, and then filed an Affidavit in court to make good on that threat.  Under this specific set of alleged facts, the court cannot say that the Rutkowski Affidavit was properly filed, even if the underlying Motion to which it was filed in opposition was ultimately unsuccessful.

[4] The defendants also assert that the Complaint fails to state a claim because the "comments in the Rutkowski [A]ffidavit" constitute Rutkowski's opinions, and "generally, a defendant cannot be held

10

Second, the Complaint alleges that the defendants filed an application for prejudgment remedy seeking an attachment of "almost $9 million"—an amount that was "unsupported by any reasonable analysis of the record" and constituted an "extortionate method concocted by [d]efendants Rutkowski and Grayson . . . to pressure [the] Getachews into paying money that they did not owe." See Compl. ¶¶ 47-48.  While sparse, these allegations, accepted as true and liberally construed, are also sufficient to constitute potential abuse of process.  See Mozzochi, 204 Conn. at 493-94 (noting that a plaintiff may state a claim for abuse of process by alleging "excessive attachments or extortionate methods").[5]  Without a factual record, the court declines to conclude, at this early stage, that plaintiffs' allegations that the prejudgment remedy was primarily for the purpose of extorting the Getachews fail as a matter of law.

In sum, the court concludes that the Complaint alleges facts that, taken together, adequately state a claim for abuse of process.  L&S and Rutkowski's Motion to Dismiss is thus denied.

---

liable for expressing a mere opinion." See Rutkowski's Mem. at 18.  The court disagrees with the characterization that the Complaint seeks to hold the defendants liable for "expressing a mere opinion."  Rather, the Complaint seeks to hold the defendants liable for filing an Affidavit with an improper purpose: to carry out prior threats to provide derogatory and incendiary statements to the New York Post for publication.  Indeed, the statements being opinions arguably bolsters plaintiffs' allegations that the Affidavit was primarily submitted to publicize derogatory statements about the Getachews, given that such personal and incendiary opinions are undoubtedly inappropriate for an Affidavit submitted in response to a Motion to Disqualify.

[5] As the defendants note, the prejudgment remedy that they sought matched the total amount of damages, "[w]hen trebled to account for statutory and punitive damages," requested in their Counterclaims against the Getachews.  See L&S and Rutkowski's State Court Counterclaims, Ex. D to Grayson's Mot. to Dismiss, at 16 (Doc. No. 24-5).  However, the court disagrees with defendants' implied argument that the requested attachment cannot be extortionate because it aligned with the request for damages in defendants' Counterclaims.  A request for a prejudgment attachment could potentially be excessive or extortionate even if it matches the relief requested by a party in their pleadings and such relief is excessive or extortionate.

B. <u>Grayson's Motion to Dismiss (Doc. No. 24)</u>

1. Litigation Privilege

The court notes that, in the reply brief to his Motion to Dismiss, Grayson adopts L&S and Rutkowski's argument that this court lacks subject matter jurisdiction because "the allegations of the Complaint are nothing more than a recast defamation claim that is barred by the litigation privilege." <u>See</u> Grayson's Reply Memorandum of Law in Support of Motion to Dismiss, at 9 (Doc. No. 42).  As discussed above, the court rejects this argument.  <u>See</u> Section IV.A.1, <u>supra</u>.  Grayson's Motion to Dismiss the plaintiff's Complaint on this ground is therefore denied.

2. Failure to State a Claim

In his Motion, Grayson, like L&S and Rutkowski, contends that the allegations of the Complaint fail to state an abuse of process claim.  Specifically, Grayson contends that the Complaint "lacks the specificity of identifying how the legal process of filing the [A]ffidavit with the Objection to the Motion to Disqualify was outside the bounds of ordinary litigation", and that the Complaint fails to allege that the primary purpose of the Rutkowski Affidavit was to cause specific injury outside the normal contemplation of private litigation.  <u>See</u> Eric Grayson's Memorandum of Law in Support of Motion to Dismiss, at 7-15 (Doc. No. 24-1).  For the reasons discussed above, <u>see</u> Section IV.A.2, <u>supra</u>, the court concludes that the Complaint alleges sufficient facts to plausibly support the claim that the Affidavit was filed primarily to accomplish an improper purpose.  Grayson advances no additional arguments that compel a different conclusion from this court.  Grayson's Motion to Dismiss is thus denied.

## V. CONCLUSION

For the reasons stated above, the defendants' Motions to Dismiss (Doc. Nos. 24 & 30) are denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of April 2024.

                                              /s/ Janet C. Hall
                                             Janet C. Hall
                                             United States District Judge