UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------- x
:
A. MARK GETACHEW AND                       :       CASE NO. 3:23-CV-01381(MPS)
AND DENORA GETACHEW,                       :
                                           :
V.                                         :
                                           :
L&S INVESTMENTS, LLC,                      :
LAWRENCE RUTKOWSKI, AND                    :
ERIC D. GRAYSON                            :       DATE: FEBRUARY 13, 2026
                                           :
------------------------------------------------------- x

# RULING ON DEFENDANT ERIC GRAYSON'S MOTION TO COMPEL
[DOC. NO. 245]

One of the plaintiffs, A. Mark Getachew, is an equity partner at Willkie Farr & Gallagher LLP ("Willkie Farr"). During the COVID-19 pandemic in 2020, Getachew and his wife rented property from Defendants Lawrence Rutkowski and L&S Investments, LLC. The parties became embroiled in a landlord-tenant dispute, which ended up in state court. The plaintiffs allege that Defendants Rutkowski, L&S Investments, and their attorney Defendant Eric Grayson, abused the litigation process by facilitating the New York Post's publication of a defamatory article, which was designed to intimidate the plaintiffs into resolving the state court case.

This Court has presided over numerous discovery disputes in this case over the past year. Now before the Court is Defendant Eric Grayson's Motion to Compel personal communications that Plaintiff A. Mark Getachew sent or received through his work email, which have been archived by his law firm employer.[1] The motion is fully briefed. For the following reasons, the defendant's motion is GRANTED.

---

[1] This motion concerns only Plaintiff A. Mark Getachew and Defendant Eric D. Grayson. Hereinafter, the terms "the plaintiff" and "the defendant" refer to these parties.

I.  **BACKGROUND**

Discovery opened in February 2024 with the filing of the parties' Joint 26(f) Report. (Doc. No. 29).

On August 22, 2024, the defendant served discovery requests on the plaintiff, which included various requests for communications about the rented property, articles about the events in the complaint, media or news outlets, and other allegations in the complaint. (Doc. No. 247-2). The plaintiff responded and objected on October 21, 2024. (*Id.*). For most responses, the plaintiff stated he did not possess the requested communications "other than those previously produced in the State Court Action" or that he was "not presently aware of any responsive documents." (*Id.*).

Also on October 21, 2024, the defendant served a subpoena duces tecum ("October 2024 Subpoena") on the plaintiff's employer, Willkie Farr. In relevant part, the defendant sought the following:

> all communications with any [prospective] client, former client, or current client regarding any media articles described in the Complaint which include without limitation an article published in the New York Post on October 21, 2020 entitled 'Ex-Disney CFO claims couple squatting in his $2.2M Connecticut mansion' and/or any articles or social media posts related thereto concerning the events giving rise to the Complaint.

(Doc. No. 247-1 at 5 (Request For Production 1)). On November 26, 2024, Willkie Farr lodged boilerplate objections and added that it "is not aware of any documents or information responsive to this request." (*Id.*).

On January 3, 2025, this Court received its first discovery referral in this case and has since presided over several discovery disputes. (Doc. No. 83). In January 2025, the Court resolved a dispute over the plaintiffs' discovery requests, which included issues about the defendants' communications, the scope of the defendants' attorney-client attorney relationship and privilege,

2

and their privilege logs. (Doc. No. 92). The Court also addressed scheduling order modification requests stemming from this dispute. (Doc. Nos. 93, 96).

In March 2025, the plaintiffs moved for sanctions against Defendant Rutkowski for purportedly failing to preserve and produce communications. (Doc. No. 101). The motion was referred to this Court and, after holding a discovery conference, it was denied without prejudice on the grounds that the parties agreed to a forensic examination and another scheduling order modification. (Doc. Nos. 101, 106).

In April 2025, the parties requested the Court's intervention regarding the collection of the plaintiff's electronically stored information ("ESI"), including text messages and emails. (Doc. No. 116). The Court held a discovery conference and instructed the parties to meet and confer with the following direction: "if defense counsel wants plaintiffs' counsel to revisit certain discovery requests, counsel shall identify topics that require revisiting <u>with specificity</u> and shall explain the basis for revisiting the topic, given plaintiffs' counsel has represented additional responsive documents do not exist." (*Id.* (emphasis in original)). The defendant filed a status report on April 29, 2025, and the parties filed a Joint Status Report on May 2, 2025. (Doc. Nos. 120, 125).

The Court held a follow-up discovery conference on May 9, 2025. (Doc. No. 131). For the first time, plaintiff's counsel informed the Court that his client did not "doesn't have the ability to search through Willkie Farr & Gallagher's emails." (Doc. No. 236 at 35:10–15). Defense counsel responded that "the plaintiffs both have the ability to search their work emails" because, in fact, they produced one email the plaintiff sent using his Willkie Farr email address. (*Id.* at 35:23–36:2). The Court stated, "I'm not looking to . . . ask the plaintiff to do something he can't do," but then noted: "My impression was the issue arose because the plaintiff did these searches

3

on his own. There were very few documents produced. It was inconsistent with other documents they had received from other parties, suggesting that there were documents that he didn't find that did exist." (*Id.* at 36:3–14). The Court further explained that the purpose of the discovery conference was to "identify the devices, the custodians, the date range, and the search terms" and added, "I can't, on the fly, comment on this issue about the plaintiff's work email, because that's the first time I've heard it." (*Id.* at 39:2–16).

The Court then narrowed the search terms with the parties. After doing so, the Court stated: "[I]t sounds like we have agreed upon custodians. It sounds like we have potentially agreed upon devices, except the work email, which you're all going to have to talk about. We have a potential date range." (*Id.* at 42:16–23). When determining how to proceed, the parties proposed different approaches, leading the Court to highlight the parties' consistent failure to collaborate and resolve issues. (*See id.* at 45:4–46:4). The Court concluded discussion about the ESI issue with the following direction:

> I want you to work together. We have a starting point. The starting point is the April 30th letter. We have two custodians that we agree on. We have emails and devices which we may or may not be in agreement on. And that's a problem. In other words, we have one, two, three—looks like two of those email addresses will be fine and two of the cell phones will be fine. It will be the Willkie email address. And you all are going to have to work that out. However, you [ ] must have disclosed something from that Willkie email address already. And the question is how did you disclose it? So one way or the other that's going to have to be worked out. And in other words, if there's relevant information on the email, just because it's his work email is not going to preclude me from ordering it. So with that, you all are going to need to figure out a way to search that email. If there's—and if you've already have an email that[ ] was disclosed[—]it's going to be hard for you to say, there's nothing there.

(*Id.* at 48:10–49:3). Following the discovery conference, the Court issued a memorandum of conference. In it, the Court directed the parties to "meet and confer to determine (a) the proper

4

date range, (b) the parameters for searching Mr. Getachew's work email, and (c) a properly narrowed set of ESI terms." (Doc. No. 131).

The parties did not follow up about this issue with the Court for seven months, during which time discovery closed and dispositive motions were filed. (Doc. Nos. 149, 155, 164, 157, 202). Notwithstanding the deadlines, the parties continued discovery through the Fall of 2025. (Doc. Nos. 245–247). The instant dispute arose around November 2025 when plaintiff's counsel informed defense counsel that the plaintiff's Willkie Farr email address had not been searched. (Doc. No. 245-2 at 3–5). Counsels' emails submitted to the Court as part of this discovery dispute suggest that former defense counsel believed that plaintiff's counsel had explicitly agreed to search and produce work emails, whereas plaintiff's counsel thought it was clear that defense counsel would have to go directly to Willkie Farr to obtain such discovery. (Doc. Nos. 245-2, 246-4, 246-5). The parties finally raised the dispute with the Court in early December, and the discovery dispute was referred to the undersigned on December 15, 2025. (Doc. No. 239).

On December 22, 2025, the Court held a discovery conference and instructed the parties to try to resolve the dispute, particularly in light of its specific instructions from the May 9, 2025 conference and accompanying discovery order. (Doc. No. 244). Because the parties failed to resolve the issue, they filed briefing pursuant to the deadlines set by the Court. (*Id.*).

II. **LEGAL STANDARD**

"[T]he scope of discovery is broad." *McCarroll v. Nardozzi*, No. 3:96CV00124 (AVC), 2004 WL 7333640, at *2 (D. Conn. Oct. 13, 2004). The "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Considerations must include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021); *Hutchins v. Palmer*, No. CV 12-5927 (JFB) (AKT), 2015 WL 13713335, at * 7 (E.D.N.Y. Mar. 31, 2015) ("[A] party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition"). After this burden has been met, the "party resisting discovery [then] bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "Put differently, the moving party must make 'a *prima facie* showing of relevance,' after which 'it is up to the responding party to justify curtailing discovery.'" *Huseby*, 2021 WL 3206776, at *6 (quoting *Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the court.'" *Mercer v. Rovella*, No. 3:16-CV-329 (CSH), 2022 WL 1514918, at *3 (D. Conn. May 12, 2022) (quoting *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981)). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Dauphinais v. Cunningham*, 395 F. App'x 745, 746-47 (2d Cir. 2010) ("[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds, and we review discovery rulings for abuse of discretion." (citations and internal quotation marks omitted)).

6

### III.    **DISCUSSION**

The defendant moves to compel communications sent and received by the plaintiff's Willkie Farr work email account ("Willkie Farr Emails"). In so moving, the defendant makes four main arguments. First, he argues that the plaintiff used his Willkie Farr email address for personal reasons related to this dispute. (Doc. No. 245-1 at 4). Second, the defendant argues that the Court does have the power to compel the plaintiff to produce his Wilkie Farr Emails, because he has possession, custody, or control despite the fact they have been archived and placed on a litigation hold. (*Id.* at 5–6). Third, the defendant contends that the plaintiff, as an equity partner, can simply request these Willkie Farr Emails. (*Id.* at 6). Fourth, the defendant points out that the plaintiff already produced some Willkie Farr Emails and should therefore be compelled to produce those that have been archived. (*Id.*).

The plaintiff concedes that he has possession, custody, or control of "any emails within the past 90 days or that he saved to his personal workspace on [Willkie Farr's] document management system." (Doc. No. 246-1 at 12). Apart from these communications, however, the plaintiff contends that he does not have possession, custody, or control of his Willkie Farr Emails, because Willkie Farr archived them and placed them under a litigation hold. (Doc. No. 246 at 7–10). He maintains that—because he lacks possession, custody, or control—he never agreed to produce the work emails. (*Id.* at 10–11). In addition, the plaintiff posits that he cannot be ordered to compel production from a non-party. (*Id.* at 11). Lastly, he states that the defendant waived its right to the documents by abandoning the October 2024 Subpoena served on Willkie Farr. (*Id.* at 11–12).

In the defendant's reply, he reiterates his position that the plaintiff has "the practical ability, if not the legal right, to have his law firm search and produce [emails related to the allegations] with agreed-upon ESI parameters." (Doc. No. 247 at 2). He also addresses issues raised by the plaintiff. First, the defendant addresses the plaintiff's discussion of the discovery conference held

7

May 9, 2025, and notes that the Court ordered the parties to "figure out a way to search" the plaintiff's work email. (*Id.* at 3–4). Second, the defendant argues that the October 2024 Subpoena did not encompass the ESI discovery he now seeks. (*Id.* at 4–6). Third, he posits that the declaration from Willkie Farr's General Counsel, Dan Kozusko, supports a finding that, as an equity partner, the plaintiff can simply instruct his law firm to run the requested ESI searches.[2] (*Id.* at 6–8). Fourth, the defendant argues that the plaintiff's case law actually supports a finding in favor of compelling production.

### A.     The Plaintiff's Waiver Arguments

The Court first addresses the plaintiff's arguments about waiver. The plaintiff argues that the defendant has waived his right to compel the Willkie Farr Emails because he should have sought to compel Willkie Farr's response to the October 2024 Subpoena but never did. (Doc. No. 246 at 7). The Court disagrees. That subpoena only included a request for communications with clients about media articles, including the New York Post article from October 21, 2020. (Doc. No. 247-1 at 5). Contrary to the plaintiff's position, the defendant is seeking ESI that he sought from the plaintiff, which was first raised in early April 2025 and addressed at a discovery conference on April 9, 2025; in status reports on April 28 and May 2, 2025; and at a discovery conference on May 9, 2025. (Doc. Nos. 113, 116, 120, 122, 125, 131). Said another way, the plaintiff is seeking ESI that the Court has already addressed and ordered, which happens to be archived with Willkie Farr's IT Department.[3]

To be sure, discovery closed before the filing of this motion. While the defendant certainly could have moved to compel the Willkie Farr Emails while the discovery period was still open,

---

[2] The defendant also expresses concern that Attorney Kozusko's declaration seems to suggest the plaintiff failed to disclose ESI from his "personal workspace." (Doc. No. 247 at 1).
[3] Even if the plaintiff was seeking the instant ESI from Willkie Farr, the Court would permit the defendant to serve another subpoena for the reasons explained in this ruling.

8

the Court finds there is good cause to permit discovery about this limited issue. Fed. R. Civ. P. 16(b)(4). As a brief background, this dispute arose from what appears to be a misunderstanding between the parties. This misunderstanding stems from the parties' wildly different interpretations of the Court's instructions during the discovery conference on May 9, 2025, in which the Court stated that discovery of the Willkie Farr Emails was warranted but ordered the parties to continue to meet and confer to resolve the "parameters for searching Mr. Getachew's work e-mail." (Doc. No. 131; *see* Doc. No. 236 at 42:15–19, 48:13–49:3). Defense counsel understood that the plaintiff would produce the Willkie Farr Emails, and the plaintiff maintains the parties never agreed to such production. Defense counsel did not understand the plaintiff's position until late November or early December 2025. (Doc. No. 246-5).

When evaluating whether discovery should be reopened, courts in this circuit consider six factors: "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the nonmoving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence." *Benn v. Metro-North Commuter R.R. Co.*, No. 3:18-CV-737 (CSH), 2019 WL 6467348, at *10 (D. Conn. Dec. 2, 2019) (collecting cases). Other than the second factor, every factor weighs in the defendant's favor. Trial is not imminent, because summary judgment motions are pending. The plaintiff will not be prejudiced, because, as the defendant points out, the plaintiff has already produced Willkie Farr Emails favorable to him and so presumably more favorable communications may be discovered. (Doc. Nos. 245-4, 245-5, 245-6). In any event, the Court has already determined that the Willkie Farr Emails were discoverable, and so the plaintiff would not be prejudiced by producing discovery

that has already been ordered. Once the defendant realized and confirmed the plaintiff had misunderstood the Court's order in early December 2025, the defendant raised the issue as soon as practicable. Because discovery is otherwise closed and the parties have already agreed to ESI terms for the plaintiff's emails, the Court finds it likely that relevant evidence will be discovered, and that the need for additional discovery is unlikely.

### B.  "Possession, Custody, or Control"

The crux of the dispute is that the parties disagree about who has possession, custody, or control of the Willkie Farr Emails. Rule 34 of the Federal Rules of Civil Procedure permits a party to request from another party ESI that is "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). Neither Rule 34 nor its advisory committee notes define these terms, and so the question of interpretation is left to the courts. *The Sedona Conference Commentary on Rule 34 and Rul 45 "Possession, Custody, or Control,"* 17 Sedona Conf. J. 467, 475 (2016).

The Second Circuit interprets "possession, custody, or control" broadly. *Id.* A party need not have physical possession to be required to comply with production. *See Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023). A party simply needs "control," which the Second Circuit defines as "the right, authority, or practical ability to obtain the documents." *Id.* at 382; *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required."). That being said, a party is not required to produce that which it "cannot obtain." *Shcherbakovskiy*, 490 F.3d at 138. When the issue of possession, custody, or control is contested, courts use a shifting burden: first, a party's "good faith averment" that the documents "are not in his possession, custody, or control" should be sufficient to resolve their failure to produce; second, the burden shifts to the movant to cite specific evidence challenging

10

the non-movant's position; and third, if the movant satisfies this burden, the burden shifts back to the non-movant "to show specifically where they have searched and why these documents are not, in fact, within their custody, possession, or control." *In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 WL 4654698, at *4 (D. Conn. Sept. 27, 2018).

Having reviewed the briefing and relevant case law, the Court finds that the defendant is entitled to the Willkie Farr Emails that he seeks. These emails concern *personal* emails that the plaintiff chose to send from his *work* email account. It is undisputed that the plaintiff can personally access Willkie Farr Emails he sent or received within the past 90 days and that he saved on Willkie Farr's document management system. (Doc. No. 246-2 at Ex. A-2). Thanks to Willkie Farr's litigation hold practice, it appears the plaintiff's other sought after emails—i.e., those that were not saved to the document management system; range from 91 days old to October 21, 2020; and fall within specific ESI terms—have been preserved and archived. (*Id.* ¶ 11). Attorney Kozusko attests in his declaration that archived emails are maintained by the Information Technology ("IT") Department, and are "not accessible to attorneys." (*Id.* ¶¶ 12–13). As this Court sees it, this attestation does not warrant a finding that the plaintiff lacks possession, custody, or control. Instead, it is merely a description about where and how the archived documents are located. Put another way, the fact that a specific department within the firm maintains archived documents does not foreclose a finding that the plaintiff still has the legal right to request and obtain his personal emails. Nor does it preclude the plaintiff from having the practical ability to work with the IT Department to obtain his personal emails, particularly if a court order specifies which emails he must produce.

The Court is not persuaded by the plaintiff's argument that he lacks "control" of the documents because he is merely a *minority* shareholder in a "multi-billion dollar global company"

11

without an executive position.  (*See* Doc. No. 246 at 9).  According to the plaintiff, because he is not an executive, he cannot obtain his personal emails that are preserved and archived by his employer.  To support his position, he cites cases where one party seeks to compel another party to produce documents *about a non-party company*.  *See Shcherbakovskiy*, 490 F.3d 130 (in a case where the appellee sought documents about a non-party's technology, explaining that "[i]f the district court finds that, contrary to appellant's present claim, [the company] is his *alter ego* or his investment in it is sufficient to give him undisputed control of the board, such a finding could support an order to produce."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006) (compelling a former senior executive to produce documents about two non-party companies' business, including bankruptcy, valuation, and assets, and liabilities); *Pitney Bowes, Inc. v. Kern Int'l, Inc.*, 239 F.R.D. 62 (D. Conn. 2006) (denying, in relevant part, motion to compel distributor from producing foreign parent company's technical drawings in a patent infringement case).  Those cases do not apply here, because the defendant in this case is not seeking documents about Willkie Farr's business.

      Rather, this case presents a typical scenario where a party is tasked with obtaining documents from his employer that are unrelated to the employer's business but are related to the allegations in the complaint.  The decision in *Gross v. Lundski*, 304 F.R.D. 136, 139 (W.D.N.Y. 2014) is instructive.  In *Gross*, the plaintiff, who was incarcerated, alleged the defendant corrections officer assaulted him without provocation.  The plaintiff sought, in relevant part, documents related to other instances of the defendant's misconduct, including documents from the prison's investigative files, Bureau of Labor Relations files, and others' grievances.  *Id.* at 140.  The defendant argued he could not produce such documents because they were in exclusive possession, custody and control of his employer (the prison) and his counsel, the Attorney General,

unsuccessfully tried to obtain the documents from the prison. *Id.* at 141. When evaluating the defendant's "practical ability" to obtain the documents, the court considered "important factors" such as the existence of a cooperative agreement between the defendant and the non-party, the non-party's stake in the litigation, and the non-party's history of cooperating with requests. *Id.* at 142. The court held that the record established "a degree of close coordination between [the prison] and Defendant with respect to the defense of Plaintiff's claim sufficient to warrant finding that Defendant has the practical ability to acquire the documents. . . ." *Id.* at 143.

The same can be said here. Plaintiff's counsel has been closely communicating with Willkie Farr's counsel regarding this dispute, including by directing Willkie Farr's counsel to communicate directly with defense counsel. (Doc. No. 246 at Ex. A). Moreover, it is reasonable to conclude that Willkie Farr has a stake in the litigation's outcome insofar as the plaintiff is an equity partner at the law firm. Although Willkie Farr lodged boilerplate objections to the October 2024 Subpoena, there is no evidence to suggest the law firm would refuse to cooperate with the plaintiff if he presented a court order compelling certain documents, especially given how closely they have coordinated to date. It also bears note that, if the Court were to rule in the plaintiff's favor, such a ruling would create an incentive to a party to use their work email address to send or receive communications they do not want discovered. An employee could easily avoid the disclosure of emails sent using an employer's email system where the employer preserves the communications on their own internal IT storage system.

To review, the defendant is entitled to the plaintiff's Willkie Farr Emails. His entitlement to the Willkie Farr Emails is not without limit, however. They must be responsive to the document requests that underlie the initial ESI dispute, as specified in the defendant's discovery dispute memorandum from April 8, 2025. (Doc. No. 113 at 2–3). The Court notes that, after litigating the

13

ESI issue for months, the parties ultimately agreed to certain ESI search terms. (*See* Doc. No. 246-1 at 9–10). In light of this ruling, the plaintiff must now run those ESI searches on his Willkie Farr email address. He may do so through Willkie Farr's IT Department or by obtaining all of the archived Willkie Farr Emails and then working with an outside vendor of the defendant's choosing to run those searches.

## IV.  CONCLUSION

For the above reasons, the Court finds that the defendant's motion to compel the Willkie Farr Emails is GRANTED. The Court ORDERS the plaintiff to produce all emails from his Willkie Farr email account—including those that are archived and placed under a litigation hold—that are relevant, non-privileged, and responsive to the following ESI search terms listed at Doc. No. 246-1 at page 10, i.e. the email from Attorney Jacobs sent on January 9, 2026 at 12:13 PM. The search shall be restricted to emails dated between October 21, 2020 to the present. The plaintiff may choose whether to work with Willkie Farr's IT Department to run the requisite searches or to obtain the entirety of his Willkie Farr Emails and then independently run the searches with an outside vendor of the defendant's choosing. The plaintiff shall comply with this order on or before **March 6, 2026**.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

It is so ordered this 13th day of February, 2026, at New Haven, Connecticut.

    /s/ Robert M. Spector, U.S.M.J.
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE